1  Joshua W. Carden, SBN 021698
2  JOSHUA CARDEN LAW FIRM, P.C.
   16427 North Scottsdale Road, Suite 410
3  Scottsdale, AZ 85254
   joshua@cardenlawfirm.com
4  (480) 454-1100
   (480) 454-1101 (Fax)
5  *Attorney for Plaintiff*

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8  Joel Montoya,

9                        Plaintiff,                 No. _____

10 v.

11 The A Group, an Arizona Corporation,             **PLAINTIFF'S ORIGINAL**
                                                    **COMPLAINT**
12                       Defendant.                 **(Jury Trial Requested)**

13

14        Plaintiff Joel Montoya, by and through undersigned counsel, seeks relief in this Complaint

15 against Defendant The A Group as follows:

16                                  **THE PARTIES**

17        1.      Plaintiff Joel Montoya is a resident of Maricopa County, Arizona, and, at all relevant

18 times in this Complaint, an "employee" of The A Group within the meaning of the relevant statutes

19 cited herein.

20        2.      The Defendant is a company registered to do business and/or doing business in the

21 state of Arizona. All acts alleged in this Complaint occurred in Maricopa County, Arizona.

22        3.      The A Group was an "employer" of Plaintiff within the meaning of purposes of the

23 Fair Labor Standards Act ("FLSA"), 29 U.S.C § 201, *et seq.*, the Americans With Disabilities Act

24 ("ADA"), 42 U.S.C § 12101, *et. seq.,* Title VII, 42 U.S.C. § 2000e, *et seq.,* the Age Discrimination

25 in Employment Act; 29 U.S.C. § 621, *et seq.*, the Family Medical Leave Act ("FMLA"), 29 U.S.C

26 § 2601, *et seq.*, and the Arizona Civil Rights Act ("ARCA"), A.R.S. § 41-1461, *et seq.*, at all times

27 material to this action.

28        4.      At all times pertinent to this Complaint, Defendant's managerial employees were



1

acting within the course and scope of their employment with Defendant; and as a result thereof, The A Group is responsible and liability is imputed for the acts and omissions of its managerial employees, as alleged herein, under the principles of *respondeat superior*, agency, and/or other applicable law.

### JURISDICTION AND VENUE

5.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331. Jurisdiction over pendent state law claims is invoked pursuant to 28 U.S.C. § 1367.

6.      The unlawful employment practices described herein were committed within the State of Arizona, on Defendant's premises located in Maricopa County, State of Arizona.

7.      Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

### ALLEGATIONS COMMON TO ALL CLAIMS

8.      Defendant The A Group is an Arizona-based educational organization.

9.      The A Group employs more than 15 people.

10.     Upon information and belief, The A Group is affiliated with a number of other companies, including Espiritu Community Development Corporation, which together may be so closely related in ownership or control as to constitute a "joint enterprise" for purposes of determining the total number of employees.

11.     The A Group employed Mr. Montoya beginning March 17, 2011 in Maintenance.

12.     Mr. Montoya is originally from Mexico, but is legally authorized to work in the United States.

13.     At all times during his employment with Defendant, Mr. Montoya was over the age of 50.

14.     In July 2012, Julio Zavaleta became Plaintiff's supervisor.

15.     Upon information and belief, Mr. Zavaleta is of Peruvian descent.

16.     Approximately three to four times per month, Zavaleta would make comments to the effect of "Mexicans are brown nosers" or "Mexicans are lazy."

17.     Zavaleta also made frequent comments to Mr. Montoya to the effect of "why don't you retire."



2

1    18.    Zavaleta most often made the "retire" comment whenever Mr. Montoya would ask

2  for time off to visit a doctor.

3    19.    Another supervisory employee, Ivan Rivera often commented to Mr. Montoya that

4  he could "find Mexicans under a rock in this state.'

5    20.    Upon information and belief, Mr. Rivera is of Peruvian descent.

6    21.    In August 2012, Mr. Montoya was diagnosed with throat cancer.

7    22.    Mr. Montoya requested and received approximately 7 weeks of leave without pay

8  from The A Group.

9    23.    Mr. Montoya did not request FMLA leave and The A Group did not offer it.

10    24.    In September 2012, Mr. Montoya returned to work at The A Group.

11    25.    Mr. Zavaleta informed Mr. Montoya that there was only part-time work for him as

12  they had hired a man to replace him.

13    26.    Mr. Montoya filed a claim with the Department of Labor, which resulted in his

14  reinstatement to full-time status and the payment by The A Group of back pay.

15    27.    In June 2013, Mr. Montoya had surgery on his neck to remove cancer cells.

16    28.    After surgery, he also received chemotherapy.

17    29.    Mr. Montoya notified Mr. Zavaleta that he would need to be out of work for

18  approximately 8 months.

19    30.    Mr. Zavaleta agreed to this medical leave.

20    31.    Mr. Montoya applied for and received FMLA leave during his chemotherapy.

21    32.    On January 14, 2014, Mr. Montoya presented The A Group's Human Resources

22  Manager Marlene Sharp with a medical clearance to return to work beginning January 20, 2014.

23    33.    This was sooner than the 8 months originally contemplated.

24    34.    Ms. Sharp informed Mr. Montoya that she would provide the note to Mr. Zavaleta,

25  Monica Rivera, and Armando Ruiz.

26    35.    Upon information and belief, Ms. Rivera is of Peruvian descent and related to Ivan

27  Rivera.

28    36.    Upon information and belief, Mr. Ruiz is of Mexican descent.



37.     On January 17, Mr. Zavaleta called Mr. Montoya and told him that he could not return to work and that The A Group had already begun to replace him.

38.     Upon information and belief, the reason for the decision to terminate Mr. Montoya involved his age, his recent and/or previous medical leaves, his actual or perceived disability, and/or his national origin.

39.     Upon information and belief, there were open positions in the Maintenance department that Mr. Montoya could have filled but for the unwillingness of The A Group to allow him back to work.

**Wage and Hour Allegations**

40.     Mr. Montoya was a non-exempt employee, scheduled to work 40 hours or more each week.

41.     Mr. Montoya's final rate of pay was approximately $10.09 per hour.

42.     Mr. Zavaleta would occasionally ask Mr. Montoya to work beyond 40 hours in a given workweek, but to do it "off the clock."

43.     Mr. Montoya would ask Mr. Zavaleta to be paid for this time worked "off the clock."

44.     On at least one occasion, Mr. Zavaleta wrote Mr. Montoya a check (not through The A Group's payroll system) for $50.00 to "cover it."

45.     However, The A Group suffered or permitted Mr. Montoya to work "off the clock" – including overtime in some workweeks – without compensation or without compensation at the required time-and-a-half rate.

46.     Soon after his termination, Mr. Montoya required additional medical care.

47.     But for his termination, the benefits he had through The A Group would have covered in large part the expenses of that care.

48.     Because he could not afford the care, Mr. Montoya has suffered additional significant medical complications.

**Administrative Remedy Exhaustion**

49.     On January 24, 2014, Mr. Montoya dual-filed a charge of discrimination with the EEOC and the Arizona Attorney General's Civil Rights Division. A true and correct copy of that



4

1     document is attached hereto as Exhibit A.

2     50.     On March 20, 2015, the EEOC issued a determination, finding that The A Group

3 violated the ADA "by denying [Mr. Montoya] reasonable accommodation and terminating his

4 employment following his release to work." A true and correct copy of that document is attached

5 hereto as Exhibit B.

6     51.     During the course of its investigation of Mr. Montoya's Charge, the EEOC learned

7 that The A Group had commingled confidential medical documentation in Mr. Montoya's

8 personnel file.

9     52.     Thus, in its determination, the EEOC also found that The A Group violated the ADA

10 by commingling confidential medical documentation in Mr. Montoya's personnel file. *See* Ex. B.

11     53.     The EEOC issued a notice of suit rights to Mr. Montoya dated June 10, 2015. A

12 true and correct copy of that document is attached hereto as Exhibit C.

13     54.     This Complaint is brought prior to 90 days from the date Mr. Montoya received the

14 notice of suit rights.

15     55.     All conditions precedent to the filing of this lawsuit have occurred or been satisfied.

16           **FIRST CAUSE OF ACTION – TITLE VII DISCRIMINATION**

17     56.     By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

18     57.     Defendant is an "employer" within the meaning of Title VII.

19     58.     Defendant has directly discriminated against Plaintiff in the terms and conditions of

20 his employment by treating Plaintiff disparately on the basis of his national origin, Mexican, in

21 violation of Title VII.

22     59.     Furthermore, the consistent comments as alleged constituted a "hostile work

23 environment," also violating Title VII.

24     60.     As a result of the foregoing, Defendant is liable to Plaintiff for violation of Title

25 VII. Defendant's acts of discrimination in this regard were unlawful and intentional.

26     61.     Defendant's conduct was malicious, done with reckless indifference, and/or

27 performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

28     62.     As a direct and proximate result of Defendant's conduct, Plaintiff has sustained



1   damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of
2   such wages and benefits into the future.

3       63.     As a direct and proximate result of Defendant's conduct, Plaintiff has further
4   sustained damages in the form of emotional distress.

5       64.     Defendant's conduct was malicious, done with reckless indifference, and/or
6   performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

7   **SECOND CAUSE OF ACTION – ADA DISCRIMINATION**

8       65.     By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

9       66.     Plaintiff's symptoms and physical condition, as described above, caused substantial
10  limitation to the performance of major life activities, and/or the perception by Defendant that
11  Plaintiff experienced substantial limitations of major life activities.

12      67.     Additionally, Plaintiff having experienced similar symptoms in the past with his
13  employer's knowledge also constitutes a record of impairment.

14      68.     Plaintiff made requests upon Defendant to reasonably accommodate Plaintiff's
15  disability.

16      69.     Though it initially agreed to the accommodation, Defendant withdrew the
17  accommodation and used it and Plaintiff's disability as a motivating factor in the decision to
18  terminate Plaintiff.

19      70.     Defendant thus failed to engage Plaintiff reasonably in the interactive process
20  required by the ADA to pursue a reasonable accommodation.

21      71.     Defendant further failed to provide Plaintiff his reasonable accommodation as
22  requested, despite the availability of accommodation and history of Defendant accommodating
23  Plaintiff informally.

24      72.     By so doing, Defendant has engaged in direct discrimination against Plaintiff, as
25  well as treating him disparately from other non-disabled workers in violation of the ADA.

26      73.     Furthermore, Defendant violated the ADA by failing to keep his confidential
27  medical information out of his personnel file.

28      74.     As a direct and proximate result of Defendant's conduct, Plaintiff has sustained



1    damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of

2    such wages and benefits into the future.

3        75.    As a direct and proximate result of Defendant's conduct, Plaintiff has further

4    sustained damages in the form of emotional distress and medical expenses.

5        76.    Defendant's conduct was malicious, done with reckless indifference, and/or

6    performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

7    **THIRD CAUSE OF ACTION – WRONGFUL TERMINATION IN VIOLATION OF**
     **THE ARIZONA CIVIL RIGHTS ACT**
8

9        77.    By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

10       78.    Defendant is an employer within the meaning of A.R.S. § 41–1461 (4).

11       79.    Plaintiff is a member of protected groups: age, Mexican, disabled.

12       80.    Because of the foregoing actions as alleged in this Complaint, Plaintiff was

13   subjected to discrimination and wrongful termination because of his age, national origin and/or

14   his disability, or for his request for a reasonable accommodation; and/or subjected to disparate

15   treatment when compared to other, younger, non-Mexican, non-disabled workers.

16       81.    The persons who engaged in discrimination were supervisory employees of

17   Defendant with immediate and ultimate authority over Plaintiff.

18       82.    Plaintiff's age, national origin, and/or disability played a substantial motivating

19   factor in the Defendant's decision to terminate him.

20       83.    As a result of the foregoing, Defendant is liable to Plaintiff for violating A.R.S. §§

21   23-1501 & 41–1463.

22       84.    Defendant's acts of discrimination – including the wrongful termination of Plaintiff

23   – were unlawful and intentional.

24       85.    As a direct and proximate result of Defendant's conduct, Plaintiff has sustained

25   damages in the form of lost wages and value of benefits. Plaintiff continues to lose the value of

26   such wages and benefits into the future.

27       86.    As a direct and proximate result of Defendant's conduct, Plaintiff has further

28   sustained damages in the form of emotional distress and medical expenses.



87. Defendant's conduct was malicious, done with reckless indifference, and/or performed with an evil mind so as to entitle Plaintiff to punitive or exemplary damages.

### FOURTH CAUSE OF ACTION – FLSA VIOLATION

88. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

89. Plaintiff was a "non-exempt" employee under the FLSA.

90. While employed with Defendant, Plaintiff was routinely required to perform work "off the clock" and required to work more than forty hours in several workweeks.

91. Defendant did not pay Plaintiff for all work performed, and did not pay Plaintiff time-and-a-half for all hours worked in excess of 40 in a given workweek.

92. As a result of Defendant's actions, Plaintiff has suffered damages by failing to receive compensation in accordance with § 207 of the FLSA

93. Under 29 U.S.C. § 216, Defendant is liable to Plaintiff for an amount equal to one and one-half times his regularly hourly pay rate for each hour of overtime worked per week, and at least minimum wage for his uncompensated time.

94. Defendant's actions in violating the FLSA were willful, unreasonable, and without good faith.

95. Thus, in addition to the amount of unpaid wages owed, Plaintiff is entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

### FIFTH CAUSE OF ACTION – FMLA VIOLATION

96. By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

97. Plaintiff applied for and received FMLA leave during his employment with Defendant.

98. As alleged above, Plaintiff was just returning from a medical leave that included his FMLA leave benefits when he was terminated by Defendant.

99. It is unlawful for Defendant to make any decision to terminate Plaintiff for exercising his rights under the FMLA.

100. Defendant used Plaintiff's exercise of his leave rights under the FMLA as a negative factor in making the decision to terminate him. *Bachelder v. American West Airlines*, *Inc.*, 259



1    F.3d 1112 (9th Cir. 2001).

2        101.    Under the FMLA, Defendant is thus liable to Plaintiff for lost compensation and

3    benefits.

4        102.    Defendant's actions in violating the FLSA were willful, unreasonable, and without

5    good faith.

6        103.    Thus, in addition to the amount of lost compensation and benefits owed, Plaintiff is

7    entitled to recover from Defendant an additional equal amount as liquidated damages.

8                    **SIXTH CAUSE OF ACTION – ADEA VIOLATION**

9        104.    By reference hereto, Plaintiff hereby incorporates the preceding paragraphs.

10       105.    As alleged herein, Defendant violated the ADEA by denying him a position for

11   which he was otherwise qualified in order to find someone younger.

12       106.    Defendant had previously done this during Plaintiff's first medical leave by

13   replacing him with a man in his 20s, until forced to reinstated Plaintiff by the Department of

14   Labor.

15       107.    Additionally, Defendant created a hostile work environment for Plaintiff by making

16   frequent comments asking when he was going to retire.

17       108.    Defendant's violation of the ADEA was willful.

18       109.    Defendant's termination of Mr. Montoya has caused him damages in the form of

19   lost compensation and benefits.

20       110.    Defendant's actions in violating the ADEA were willful, unreasonable, and without

21   good faith.

22       111.    Thus, in addition to the amount of unpaid wages owed, Plaintiff is entitled to recover

23   an additional equal amount as liquidated damages pursuant to the ADEA.

24                            **JURY TRIAL DEMANDED**

25       112.    Plaintiff demands a trial by jury.

26                              **PRAYER FOR RELIEF**

27       WHEREFORE, Plaintiff respectfully requests that this Court enter judgment as follows:

28       A.    Declaring that the acts and practices complained of herein are in violation of federal



9

1     and/or state law;

2          B.      Directing The A Group to take such affirmative action as is necessary to ensure that

3 the effects of these unlawful employment practices are eliminated and do not continue to affect

4 Plaintiff's employment or employment opportunities;

5          C.      Directing The A Group to place Plaintiff in the position he would have occupied but

6 for The A Group's discriminatory treatment, and make him whole for all earnings he would have

7 received but for The A Group's discriminatory treatment, including, but not limited to, back pay,

8 front pay, pension, and other lost benefits, as well as liquidated damages for the FLSA, FMLA

9 and/or ADEA violations;

10         D.      Awarding Plaintiff compensatory and punitive damages in an amount to be

11 determined by the jury.

12         E.      Awarding Plaintiff pre- and post-judgment interest, the costs of this action, and

13 reasonable attorneys' fees as provided by the statutes providing the causes of action cited herein.

14         F.      Granting such other and further relief as this Court deems necessary and proper.

15         Respectfully submitted on this 2nd day of September, 2015,

16                                      JOSHUA CARDEN LAW FIRM, P.C.

17

                                   By: s/Joshua W. Carden

18                                    Joshua W. Carden
                                   *Attorneys for Plaintiff*

19                                    *Joel Montoya*

20

21

22

23

24

25

26

27

28

